IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Joanna Nonie Caddo,<br><br>　　　　　Defendant. | No. CR-18-08341-002-PCT-JJT<br><br>**ORDER** |

　　　　Defendant Joanna Nonie Caddo, who is in custody pending disposition of a probation violation, has moved the Court for her release pending disposition, or in the alternative, an acceleration of her disposition hearing, which is currently set for April 13, 2020 (Doc. 169). The government has filed a Response (Doc. 171) and Defendant has filed a Reply (Doc. 172). The Court concludes it would not be aided in its decision by additional argument at hearing. LRCiv 7.2(f).

　　　　In October 2018, the government charged Defendant Caddo and her two co-defendants with Assault Resulting in Serious Bodily Injury. The Pre-Sentence report establishes that after smoking methamphetamine, the three had a physical altercation with an eighteen-year-old female victim, who sustained a broken clavicle that required two surgeries to repair and disqualified her from her planned military enlistment (Doc. 113). Pursuant to a plea agreement, Defendant entered a guilty plea to the charge of Misprision. This reduced her advisory guideline range from 24-30 months, for the original assault with serious bodily injury charge, to 4-10 months for the misprision charge (Docs. 120, 113).

The parties stipulated to a sentence of 36 months of probation (Doc. 120). The Court accepted the plea agreement and sentenced Defendant accordingly on June 21, 2019. (Doc. 122.)

On January 22, 2020, United States Probation filed a Petition to Revoke Probation as to Defendant (Doc. 155). The Petition alleged that Defendant violated three terms of her probation: 1) she used methamphetamine, in violation of Mandatory Condition #3; 2) she changed her residence twice without notifying or receiving approval form her probation officer, including being discharged from a sober living residential facility for rule violations, and her whereabouts were ultimately unknown, in violation of Standard Condition # 5; and 3) after testing positive for and admitting methamphetamine use, she was directed by her probation officer to enter a residential drug treatment program in which her probation officer had secured her a bed, and she refused to do so (Doc. 155). Defendant was arrested thereafter and Magistrate Judge Bibles ordered her detained upon a finding that she was both a flight risk and a danger on February 19, 2020 (Doc. 161). On March 6, 2020, Defendant entered an admission to one of the allegations that she changed residences without notifying or obtaining approval of her probation officer (Doc. 165).

On March 17, 2020, Defendant's counsel filed the instant motion, seeking either release with conditions pending disposition of the probation violation, or an immediate disposition hearing. Defendant bases her motion on the sudden rise of Covid-19, citing its potential lethality, in particular to persons with certain "underlying health issues." (Doc. 159 at 2.) The Motion states that "Ms. Caddo is such a person. As the Presentence Report in this case confirmed, Ms. Caddo is 'not a healthy person.' PSR at 41. She suffers from thyroid and pancreatic issues. Id." Defendant states in her motion that Covid-19 spreads through close contact, and detention facilities by their nature cannot avoid close contact among detainees at certain junctures. She points out that a group of "31 top prosecutors throughout the country" have called for action to address the dangers of Covid-19, and have recommended, among other steps, the release of prisoners with less than 6 months to serve (Doc. 159 at 2-3). Finally Defendant notes that the recommended guideline range for

the violation to which she admitted is 4 to 10 months and she has been in custody for approximately a month already; accordingly, Defendant argues, because she faces "a minimal custodial sentence" upon revocation, and has the possibility to not be revoked at all pursuant to U.S.S.G. 7B1.3, the Court should avoid the risk of contagion to Defendant, as an unhealthy person, and release her now, or accelerate her disposition hearing.

In its Response, the government argues first that Magistrate Judge Bibles has already concluded, based on the facts before her, that Defendant presented a risk of flight and danger that could not be mitigated, and that no circumstances have changed since Judge Bibles made that determination (Doc. 161). The government also argues that Defendant's concerns regarding risk of infection by Covid-19 are speculative and ignore the measures CoreCivic has put in place to comply with Centers for Disease Control standards to contain and address Covid-19 risk, including testing, isolation and quarantining procedures. Finally, the government posits that Defendant has not demonstrated she is at any greater risk of contracting Covid-19 in custody than out of custody. Id.

While the Court does not agree with all of the government's points as made in its response, it will deny Defendant's Motion. The Court takes seriously the current pandemic issue as it impacts criminal justice issues generally and specifically, and is cognizant of the reality that where the law authorizes the detention of a criminal defendant for a time certain once sentenced or dispositioned, or for an indeterminate period pending a disposition, it does not authorize or permit exposure of that defendant to unreasonable risks to life, health or safety. For those reasons, the notion behind the recommendations of the "31 top prosecutors" that Defendant cites may well have merit in individually justified circumstances, where such determination is properly within the discretion of a court. But here, too much is speculative to outweigh the legitimate countervailing concerns the government raises—namely, that Defendant has by her actions after being placed on probation, demonstrated that she does present a risk to the community, and a flight risk, both of which must be addressed.

First, the Court concludes that Defendant's assertion she is at greater risk than other

defendants if she contracts Covid-19 is speculative, and based solely on an overreaching characterization of the Pre-Sentence Investigation report in this matter. What Paragraph 41 of the Pre-Sentence Investigation Report actually states is as follows: "Prior court records indicate the Defendant's sister reported the Defendant is not a 'healthy person,' as Caddo suffers from thyroid and pancreas issues. Her sister advised the Defendant's body becomes swollen at times, however she was uncertain if it is allergy-related or as a result of her condition." The information before the Court is that a lay family member of Defendant reports she has unspecified issues with thyroid and pancreas, and her body swells at times. There is no indication even of what those conditions are, how serious they are, or whether they are of a type that makes Defendant more at risk if exposed to Covid-19. Nor is there any indication or clarification of such conditions from a medical professional. Indeed, such medical determinations are far more likely to be made—and acted upon by safety protocol—in a CoreCivic medical facility that if Defendant were released at large to the community.

     Second, even if the Court were to simply accept the recommendations of the "31 top prosecutors" Defendant references, it does not appear that Defendant's circumstances put her within the ambit of the proffered recommendation. Defendant correctly notes that her recommended sentencing range for the admitted violation is 4 to 10 months, and she has already been in custody for just over a month. Counsel should not presume the Court will view the admitted violation as less than serious, for the reasons set forth in the next paragraph. But even if this Court were to impose a low-end term of incarceration under the recommended range, the government correctly notes that Probation will recommend—and the Court will impose—a term thereafter of up to 6 months in a residential substance abuse treatment facility as well, for the obvious reason that both the underlying offense and the probation violations alleged all stem from Defendant's methamphetamine addiction, which is clearly not yet under control. She has failed to complete one sober living residential program in the past and refused to go to another residential substance abuse program. The Court thus will need to see her successfully complete such a concentrated

residential program before it will conclude that her risk to the community or herself is heading in the right direction. And that residential treatment will present all of the same human contact issues pertaining to Covid-19 as are present at CoreCivic or a BOP detention facility. Thus a combined term of incarceration and residential treatment will necessarily exceed 6 months. That puts Defendant outside the window for release under the "31 top prosecutors'" recommendation.

Finally, Defendant continues to present a significant danger to her community. Her underlying conviction stemmed from a violent assault that caused the victim serious physical injury. In seeking a probation sentence, her counsel emphasized how critical integrated and concentrated residential treatment was to her rehabilitation. When the Court imposed probation and the residential treatment she requested, she violated the program's rules and was discharged. And without the facility's support, Defendant succumbed to temptation and used methamphetamine. Then, when her probation officer gave her another chance and, rather than violating her, secured her another residential treatment placement, she refused to go. The issues that led to her involvement in a violent assault are therefore unchecked, and have manifested in other risky and dangerous decisions, including a new arrest for driving under the influence. It does not strike the Court that all of this danger should be overlooked and Defendant released pending disposition of the violation absent an actual showing that her detention puts her at unreasonable risk to life or safety.

No such showing has been made. The Court is not persuaded by the government's argument that Defendant is safe simply because there were no confirmed instances of Covid-19 in the BOP system as of the writing of the Response. As Defendant points out in her Reply, it is unknowable whether BOP detainees or inmates have Covid-19 until they are tested, and BOP has not conducted many or any such tests because, like the rest of the country, BOP has very few or no actual Covid-19 test packets. But the CoreCivic and BOP protocols for warning sign monitoring, examination, quarantining, isolation and other health procedures they have in place are comparable, if not superior, to what Defendant would face out of custody. CoreCivic's, BOP's and the Marshal's procedures have not been

shown to be unreasonable under the circumstances. The Court will not release Defendant pending disposition of her probation violation.

In the alternative to release, Defendant seeks acceleration of her disposition hearing. The Court concludes this relief would only be meaningful if the Court intended to reinstate probation and release Defendant at that hearing—a result that does not strike the Court as likely at this point in light of all discussed above. The Court will thus not accelerate the disposition hearing.

**IT IS ORDERED** denying Defendant's Motion for Release from Custody Pending Disposition or Immediate Disposition (Doc. 169).

Dated this 23rd day of March, 2020.

Honorable John J. Tuchi
United States District Judge